12-4575-cv
F.L. v. N.Y.C. Dep't of Educ.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of January, two thousand fourteen.

PRESENT:  ROBERT D. SACK,
          REENA RAGGI,
          CHRISTOPHER F. DRONEY
                    *Circuit Judges*.

------------------------------------------------------------------------

F.L., by his parents F.L. and M.L.,
                    *Plaintiffs-Appellants*,

          v.                                      No. 12-4575-cv


NEW YORK CITY DEPARTMENT OF EDUCATION
                    *Defendant-Appellee*.
------------------------------------------------------------------------

FOR APPELLANTS:          Gary S. Mayerson, Tracey Spencer Walsh, Maria Christine McGinley, Mayerson & Associates, New York, New York.

FOR APPELLEE:            Francis F. Caputo, Assistant Corporation Counsel, Moon Choi, of Counsel, *for* Michael A. Cardozo, Corporation Counsel of the City of New York, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Richard K. Eaton, United States Court of International Trade, sitting by designation, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on October 17, 2012, is AFFIRMED.

Plaintiffs, the parents of F.L., a now 15-year old autistic child, appeal from an award of summary judgment in favor of defendant New York City Department of Education ("DOE") on their claim for reimbursement of private educational expenses incurred as a result of the DOE's alleged failure to provide F.L. with the free and appropriate public education guaranteed by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq. We engage in a "circumscribed de novo review" of a summary judgment award in the IDEA context, mindful that "the responsibility for determining whether a challenged [individualized education program ("IEP")] will provide a child with [a free and appropriate public education] rests in the first instance with administrative hearing and review officers." M.W. v. N.Y.C. Dep't of Educ., 725 F.3d 131, 138 (2d Cir. 2013) (quotation marks omitted). Plaintiffs here contend that no deference to the administrative review officer is warranted because he improperly placed the burden on plaintiffs to prove that the DOE's proposed 2009–2010 IEP for F.L. would not afford the child a free and appropriate public education, rather

2

than requiring the DOE to show that it did, and also impermissibly relied on retrospective evidence. Plaintiffs further contend that the IEP is, in fact, procedurally and substantively deficient in providing F.L. with the IDEA-guaranteed education. We assume the parties' familiarity with the facts and the voluminous record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.      Burden of Proof

Before the district court, plaintiffs did not argue that the State Review Officer ("SRO") misapplied the burden of proof set forth in N.Y. Educ. Law § 4404(1)(c), which requires the DOE to prove that the challenged IEP provided F.L. with the guaranteed free and appropriate public school education. Accordingly, we deem that argument forfeited on appeal. See Oneida Indian Nation of N.Y. v. Madison Cnty., 665 F.3d 408, 441 (2d Cir. 2011).

Even if that were not the case, however, the argument would fail on the merits. In his detailed 27-page single-spaced decision, the SRO specifically cites § 4404(1)(c) and states that "[t]he burden of proof is on the school district during an impartial hearing" to demonstrate that an IEP provides the guaranteed free and appropriate public education. SRO Decision 13. In arguing that the SRO nevertheless shifted the burden to them, plaintiffs point us to various statements in the decision concluding that their challenges were not supported by record evidence. These statements, however, are not made in

3

isolation, but in the context of discussing evidence that supported the DOE's defense of the IEP. In such circumstances, we are not persuaded that the SRO failed to apply the very burden that, at the outset, he recognized New York law to impose.[1]

Thus, we reject plaintiffs' burden argument as a reason to reverse.

2.    Retrospective Testimony

Plaintiffs did argue before the district court that the administrative denial decisions impermissibly relied on retrospective testimony. In pursuing the same argument on appeal, they rely on our decision in R.E. v. New York City Department of Education, 694 F.3d 167 (2d Cir. 2012), which holds that a school district may not augment a challenged IEP with "'retrospective testimony,' i.e., testimony that certain services not listed in the IEP would actually have been provided to the child if he or she had attended the school district's proposed placement." Id. at 185 (emphasis added). Thus, we first identify the services listed in the IEP.

The 26-page 2009–2010 IEP for F.L. established 15 annual goals and 84 short-term objectives for the child. It proposed for the child to achieve these goals and

[1] Because we identify no burden shifting by the SRO, we necessarily reject plaintiffs' argument that the district court also implicitly shifted the burden on its review. Thus, we need not decide the open question in this circuit as to whether N.Y. Educ. Law § 4404(1)(c) is binding on district court review of an IDEA claim. See M.W. v. N.Y.C. Dep't of Educ., 725 F.3d at 136 n.1 (declining to address question); R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 185 n.2 (2d Cir. 2012) (noting that "Supreme Court has not decided whether a state-imposed burden in an initial hearing also applies in a subsequent federal suit" under IDEA).

4

objectives in a specialized school with a staffing ratio of 6:1:1. It further proposed the following weekly related services: full time behavior management (with a paraprofessional assigned exclusively to F.L.); four 1:1 and one 2:1 hour long sessions of speech and language therapy; and five 1:1 45-minute sessions of occupational therapy. The parents disputed the DOE's ability to provide the specified speech and occupational therapy services given evidence of IEP implementation problems with respect to such services at the assigned school. In response, the DOE offered testimony from the school's assistant principal stating that no such problem would arise in F.L.'s case because, if necessary, his related services would be arranged through outside providers. The DOE offered testimony that the school provided related services through district providers or, where needed, by contracting with outside providers. If outside providers were not available, parents would be provided with vouchers to secure such services from private providers. Such testimony did not pertain to services not listed in the IEP; rather, it explained how listed services would be provided. Thus, the testimony was not outside the bounds fixed in R.E. See 694 F.3d at 185 (holding that "testimony regarding state-offered services may only explain or justify what is listed in the written IEP," and "may not support a modification that is materially different from the IEP").

In urging otherwise, plaintiffs cite to B.R. ex. rel. B.O. v. N.Y.C. Dep't of Educ., 910 F. Supp. 2d 670 (S.D.N.Y. 2012), another case involving an autistic child, in which

5

the IEP identified a need, inter alia, for three half-hour 1:1 occupational therapy sessions per week outside the classroom, see id. at 676. There, the parents' contention that such services would not be provided in the recommended placement was not based on general implementation concerns drawn from other cases. Rather, it was based on a specific statement to the child's mother from the proposed school's occupational therapist that "occupational therapy at the school was provided in a group of six students four days a week, inside the classroom," id., which was then confirmed in the testimony of the school's assistant principal, see id. at 677. In these circumstances, where the school district sought to rely on testimony contradictory to what the parents had been told at the time of the placement decision, the district court construed R.E.'s retrospective testimony bar to apply. Assuming without deciding that this properly construes R.E., the related services testimony at issue in this case does not contradict anything told to the parents before the placement decision; it merely explains how the DOE intended to satisfy the IEP's related services requirements.

Accordingly, we identify no retrospective testimony error warranting reversal of summary judgment.[2]

---

[2] Insofar as plaintiffs cite other examples of purportedly retrospective testimony, we do not discuss each in turn because, on review of the record, we conclude that any findings to which such evidence was applicable were otherwise supported by evidence to which no retrospective testimony objection can be raised.

3. Procedural Defects

IDEA review of an IEP is in two parts, "first, procedural, and second, substantive." R.E. v. N.Y.C. Dep't of Educ., 694 F.3d at 189–90. While "[s]ubstantive inadequacy automatically entitles the parents to reimbursement," id. at 190, procedural violations do so only if they "impeded the child's right to a free appropriate public education," "significantly impeded the parents' opportunity to participate in the decisionmaking process[,]" or "caused a deprivation of educational benefits," 20 U.S.C. § 1415(f)(3)(E)(ii); see R.E. v. N.Y.C. Dep't of Educ., 694 F.3d at 190. While the plaintiffs here advance various procedural errors, none implicates these statutory concerns.

a. Behavioral Intervention Plan

Plaintiffs fault the DOE for failing to conduct a Functional Behavioral Assessment of F.L., see N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(b)(1)(v) (requiring such assessment "for a student whose behavior impedes his or her learning or that of others, as necessary to ascertain the physical, mental, behavioral and emotional factors which contribute to the suspected disabilities"), and for developing an inadequate Behavioral Intervention Plan for the child.

While we have recognized the failure to conduct a Functional Behavioral Assessment as a "serious procedural violation," we have also concluded that it does not

7

rise to the level of a denial of a free and appropriate public education "if the IEP adequately identifies the problem behavior and prescribes ways to manage it." R.E. v. N.Y.C. Dep't of Educ., 694 F.3d at 190 (citing A.C. ex. rel. M.C. v. Bd. of Educ. of The Chappaqua Cent. Sch. District, 553 F.3d 165, 172 (2d Cir. 2009)). Here, the record shows that a Committee on Special Education team, at an IEP meeting attended by F.L.'s mother, considered F.L.'s behavioral concerns as evidenced in extensive materials from the McCarton School, which he had attended since age five. With the benefit of that information, and recommendations from F.L.'s McCarton teachers, the team then developed a Behavioral Intervention Plan reasonably calculated to address those behaviors through IEP provisions for predictable routines, visual support, repetition, positive reinforcement, prompting, and a full-time 1:1 behavioral management paraprofessional. In these circumstances, there is no basis to conclude that the team's failure to conduct its own Functional Behavioral Assessment of F.L. denied the child a free and appropriate public education. See M.W. v. N.Y.C. Dep't of Educ., 725 F.3d at 141 (holding that lack of Functional Behavioral Assessment did not deny free and appropriate public education where (1) Committee on Special Education team "reviewed documents regarding the student's behavior," and (2) "IEP provided strategies to address those behaviors, including the use of a paraprofessional"); R.E. v. N.Y.C. Dep't of Educ., 694 F.3d at 193 (holding that failure to create Functional Behavioral Assessment did not

8

deprive child of free and appropriate public education where IEP included specific strategies to address behaviors, including use of 1:1 aide to help him focus).

b.     Parent Counseling

Plaintiffs fault the IEP for not providing parent counseling and training as a related service, as required by New York regulations. See N.Y. Comp. Codes R. & Regs. tit. 8, §§ 200.13(d), 200.1(kk). Because New York requires such counseling and training without regard to whether an IEP specifically recommends it, see id. § 200.13(d), we have held that an IEP's failure to provide for counseling ordinarily does not, by itself, result in the denial of a free and appropriate public education or warrant tuition reimbursement. See M.W. v. N.Y.C. Dep't of Educ., 725 F.3d at 142 (citing R.E. v. N.Y.C. Dep't of Educ., 694 F.3d at 191). No different conclusion is warranted here, particularly where the SRO's finding that F.L.'s mother knew that the proposed placement provided parental training finds support in the record.[3]

c.     Inclusion of Parents in Placement Selection

Insofar as plaintiffs contend that they should have participated in the DOE's selection of a specific school placement, the district court did not err in deferring to the SRO's denial of this claim. See T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 419–20 (2d

---

[3] Because New York requires these counseling and training services to be provided even if not listed in an IEP, testimony that such training would be provided does not propose to modify an IEP in such a way as to warrant application of our retrospective testimony bar.

9

Cir. 2009) (concluding that "there is no requirement in the IDEA that the IEP name a specific school location").

d.  Cumulative Violations

Plaintiffs argue that even if no one procedural error deprived F.L. of a free and appropriate public education, cumulatively they had that effect. See R.E. v. N.Y.C. Dep't of Educ., 694 F.3d at 190. We have reviewed the record, and it does not support that conclusion.

4.  Substantive Adequacy

In reviewing the substantive adequacy of a challenged IEP, we are mindful that the IDEA's free and appropriate public education mandate requires a school district to provide "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction" in more than a trivial way. Board of Educ. v. Rowley, 458 U.S. 176, 203 (1982); see Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 194–95 (2d Cir. 2005). At the same time, we recognize that what the IDEA ensures is an "appropriate education, not one that provides everything that might be thought desirable by loving parents." Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 215 (2d Cir. 2012) (internal quotation marks omitted). Thus, we will not "substitute our own notions of sound educational policy for those of the school authorities under review"; rather, we "must defer to the administrative decision particularly where the state officer's review has

been thorough and careful." M.W. v. N.Y.C. Dep't of Educ., 725 F.3d at 138–39 (internal alterations, citations, and quotation marks omitted).

### a. F.L.'s Need for a 1:1 Teaching Ratio

At the core of this appeal is plaintiffs' view that F.L. requires a 1:1 teaching ratio to make any meaningful educational progress. Thus, they contend that an IEP offering a 6:1:1 classroom with a 1:1 paraprofessional aide must be deemed substantively inadequate.

Here, all educators agree that F.L. needs 1:1 support to make any meaningful educational progress, but they disagree as to whether that can be provided by a paraprofessional within a small group environment or whether it demands a 1:1 teacher ratio. As this court recently observed, "[t]he adequacy of 1:1 paraprofessional support as opposed to 1:1 teacher support is precisely the kind of educational policy judgment to which we owe the state deference if it is supported by sufficient evidence." R.E. v. N.Y.C. Dep't of Educ., 694 F.3d at 192. The record here contains sufficient evidence to warrant deference to the SRO's conclusion that a 6:1:1 teaching ratio with support by a full-time 1:1 behavioral management paraprofessional is adequate to allow F.L. to make meaningful educational progress.

Ample record evidence indicates that F.L.'s primary impediments to learning relate to problems with attention; his need for prompting; and his extensive interfering

11

behaviors, including roaming, rocking, humming and tapping, making clicking sounds with his mouth, and non-functional vocalizations. As already noted, the Committee on Special Education team reviewed extensive materials evidencing these behavioral concerns when drafting F.L.'s IEP, and the DOE school psychologist who participated in the IEP meeting testified that a 1:1 paraprofessional who could help modify F.L.'s behaviors was appropriate. Given the particular nature of F.L.'s disability, then, it was not unreasonable for the SRO to conclude that, with dedicated 1:1 support by a behavioral management paraprofessional, F.L. could make meaningful educational progress in a classroom with a 6:1:1 teaching ratio.

In urging otherwise, plaintiffs point to the testimony of F.L.'s McCarton teachers and a McCarton progress report stating that F.L. requires 1:1 teaching instruction to learn. This does not, however, compel a conclusion that 1:1 instruction by a paraprofessional under the supervision of a certified teacher would be inadequate to meet F.L.'s academic needs. First, although F.L.'s McCarton teachers uniformly testified that F.L. can only learn in a 1:1 setting, they did not explain why this could not be effected through 1:1 instruction by a supervised behavioral management paraprofessional. F.L.'s head teacher at McCarton testified that the child required 1:1 instruction because of his "high [rates] of behavior." C.A. 214. And McCarton's director, when asked what skills an instructor would need to be able effectively to teach F.L., responded that the person would need to

12

know "how to prompt," "[h]ow to use visual support," and "how to teach generalization immediately." C.A. 223. Second, the record suggests that even McCarton did not provide F.L. with full-time 1:1 certified teaching instruction, as only two of the instructors in F.L.'s six student class were certified teachers. Third, the same McCarton progress report cited by plaintiffs to support their argument that F.L. requires 1:1 teaching also notes that "[a]lthough one instructor continues to shadow [F.L.] in the context of a dyad or group instruction, he made progress in attending to the group leader for up to 10 minutes," and "[o]verall, his independent functioning and social interaction have increased in the context of learned routines and activities." C.A. 679. On this record, we cannot conclude that the Committee on Special Education, the IHO, and the SRO could not reasonably have determined that educational instruction in a 6:1:1 class with a 1:1 behavioral management paraprofessional under the direct supervision of a certified teacher would not afford F.L. the opportunity to make meaningful educational progress.

b.    The Recommended School Placement

Plaintiffs submit that F.L.'s placement at P.S. 138 was substantively inadequate because the school did not itself provide adequate speech-language therapy or occupational therapy to its students and, thus, would not have been able to implement the related services mandate of F.L.'s IEP. This claim challenges the DOE's choice of school, rather than the IEP itself. As we have elsewhere held, "[s]peculation that the

13

school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement," and "[a] suggestion that some students are underserved" at a particular placement "cannot overcome the particularly important deference that we afford the SRO's assessment of the plan's substantive adequacy." R.E. v. N.Y.C. Dep't of Educ., 694 F.3d at 195 (internal quotation marks omitted). Rather, the appropriate forum for such a claim is "a later proceeding" to show that the child was denied a free and appropriate public education "because necessary services included in the IEP were not provided in practice." Id. at 187 n.3. Thus, we identify no merit in plaintiffs' claim of substantive inadequacy.

Plaintiffs' remaining procedural and substantive challenges are presented in a generally conclusory fashion. Nevertheless, we have reviewed them to the extent possible and reject them as without merit.[4] Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

---

[4] Insofar as plaintiffs argue, e.g., that the DOE (1) failed to consider and recognize the superiority of ABA over TEACCH methodology for F.L., (2) failed to discuss or develop a transition plan, and (3) proposed an inappropriate group placement for F.L., their conclusory assertions are insufficient to demonstrate error by the SRO in upholding the challenged IEP. See M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 225 n.3 (2d Cir. 2012) (observing that burden of demonstrating administrative error falls on plaintiffs).

14