# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 8, 2026

Lyle W. Cayce
Clerk

———————

No. 24-10929

———————

Derick Miller,

*Plaintiff—Appellant*,

*versus*

Federal Crop Insurance Corporation; The Risk Management Agency of the United States Department of Agriculture; Thomas J. Vilsack,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:23-CV-69

———————————————————————

Before Jones and Graves, *Circuit Judges*, and Rodriguez, *District Judge*.[*]

Per Curiam:[†]

Derick Miller appeals the district court's grant of summary judgment in favor of the Federal Crop Insurance Corporation in this action stemming

———————————————

[*] District Judge of the Southern District of Texas, sitting by designation.

[†] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-10929

from the denial of a federal crop insurance claim. For the reasons stated herein, we AFFIRM.

## I.

Derick Miller is a farmer from Gaines County, Texas, who purchased a Federal Crop Insurance Policy pursuant to the Federal Crop Insurance Act, 7 U.S.C. § 1501 et seq., for his 2021 cotton and peanut crops. Through the Federal Crop Insurance Corporation (FCIC) and the Risk Management Agency (RMA), the United States Department of Agriculture (USDA) essentially licenses private companies to sell and service crop insurance policies that are written and reinsured by the United States. *See* 7 U.S.C. § 1503.

In 2021, Miller planted and insured 1,498 acres of cotton and 1,197 acres of peanuts in Gaines County, and 240 acres of cotton and 240 acres of peanuts in Yoakum County. Miller purchased his policy from Crop Risk Services (CRS). *See* 7 C.F.R. §§ 457.104, 457.134. In July 2021, the RMA opened a review of Miller based on a confidential complaint alleging that he was not following good farming practices (GFP). Both Miller and his provider were notified of the review. Thereafter, the provider's loss adjusters performed inspections and assessed Miller's peanut and cotton crops.

Miller asserts that multiple adverse weather events, including drought, excess rainfall, high wind, and heat, resulted in damage to crops growing in those counties that year. As a result, Miller notified his provider, CRS, of his losses and filed a crop insurance claim. Miller asserts that at least 119 crop insurance claims were paid to farmers in Gaines County, and 100 paid in Yoakum County. He further asserts that 92 of the paid claims for losses to cotton and 59 of the paid claims for losses to peanuts in Gaines and Yoakum counties were attributed to wind, heat, hail, and/or excessive

rainfall.  However, Miller's claim was denied on the basis that Miller had failed to use GFP in the production of his crops.  *See* 7 U.S.C. § 1508(a)(3)(A)(iii); *see also* 7 C.F.R. § 457.8.

Miller filed suit in district court for declaratory and injunctive relief against the FCIC, RMA, and USDA (collectively "USDA" or "agency"), asserting that the GFP determination was erroneous.  The district court denied Miller's motion for judgment on the administrative record and granted summary judgment to the agency.  Miller appealed.

## II.

This court reviews de novo a district court's grant of summary judgment, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.  *Dediol v. Best Chevrolet*, 665 F.3d 435, 439 (5th Cir. 2011).  Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  In the context of the Administrative Procedure Act (APA), the general standard is whether the final decision of the agency was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 627 (5th Cir. 2001)(quoting 5 U.S.C. § 706(2)(A)).  "We limit our review to whether the agency articulated a rational connection between the facts found and the decision made." *Hayward v. United States Dep't of Labor*, 536 F.3d 376, 380 (5th Cir. 2008) (internal marks and citation omitted).  "[I]t is well-settled that an agency's

action must be upheld, if at all, on the basis articulated by the agency itself." *Id.* (citation omitted).

### III.

Miller asserts that the district court erred in granting summary judgment because the agency failed to consider the factors relevant to a GFP determination, failed to support its determination by substantial evidence, and improperly disregarded expert opinion in making the determination. Miller also asserts that the GFP determination did not comply with the agency's own regulations and procedures. Thus, he asserts that the agency action was arbitrary, capricious, in error, and not supported by substantial evidence.

Crop insurance excludes coverage for losses due to the failure to follow GFP. *See* 7 U.S.C. § 1508(a)(3)(A)(iii). The RMA is given the authority to determine whether producers are following good farming practices. 7 U.S.C. § 1508(a)(3)(B).

Good farming practices are defined as:

> The production methods utilized to produce the insured crop and allow it to make normal progress toward maturity and produce at least the yield used to determine the production guarantee or amount of insurance, including any adjustments for late planted acreage, which are those generally recognized by agricultural experts or organic agricultural experts, depending on the practice, for the area. We may, or you may request us to, contact FCIC to determine if production methods will be considered "good farming practices."

7 C.F.R. § 457.8 ¶ 1.

Miller states that his crops were undergoing a "growing season inspection" (GSI), and a pre-harvest inspection in 2021. He asserts that

inspectors who physically inspected the crops had indicated that "some stands are weak," or had low plant populations, but the crops were "comparable" to others in the general area and the box for "NO" was checked by the question of whether the farming operation should be reviewed at a later date. However, the particular GSI report that Miller cites appears to be limited to the 240 acres of peanuts in Yoakum County. Also, that same question said to explain why or why not, and no explanation was provided. Further, the GSI report had "NO" checked next to the question asking whether the appraisals "substantiate a reasonable expectation of meeting the APH yield." Moreover, Miller's provider also determined that he had not used GFP.

Following Miller's claim, the RMA sought expert opinions from James Todd, Mark Scott, and Dana Porter on Miller's farming practices. Miller provided letters and/or affidavits from Geoff Cooper, a county extension agent, and Dr. Justin Tuggle, an agronomist. On October 25, 2022, the "Good Farming Practices Determination for Derick Miller" was issued. The determination found that Miller's peanut irrigation and weed control practices did not meet the GFP. The determination referenced various evidence, including the provider's "observational, photographic, and biomass imaging evidence of weed infestation of your peanut crops to the degree that it competed with your crop for moisture and nutrients." It also noted the finding that, "[w]hile post-emergence chemical and mechanical controls (cultivation, hoeing, and mowing) were applied … it appears that these methods were applied too late to adequately control the weeds." Additionally, the determination noted that Miller's peanut seeding rate was lower than recommended – he was seeding 47,000 seeds per acre when 73,000 to 87,000 seeds per acre were recommended, and he was contradicting the Texas Peanut Production Guide on crop rotation. The determination said that an independent determination had been done on his

peanut fields, and it appeared he had overestimated the rainfall amounts by an average of 7.75 inches. The determination expressed agreement with the provider's conclusion that he did not follow the GFP "of supplying water at the critical time and the proper amount to establish and maintain a proper stand of peanuts." The determination also found that Miller's cotton weed control practices did not meet GFP and referenced similar evidence pertaining to that.

Miller asserts that the FCIC refused to meaningfully consider the reports of Tuggle and Cooper. He argues that such refusal is arbitrary and capricious, and it disregards applicable procedures. Specifically, Miller asserts that his experts "were given only a few sentences of attention" in the 6-page determination "and were summarily dismissed as less credible than the 'expert' favored by the Defendants, Mark Scott." He also argues that Tuggle and Cooper "contradicted the opinion of Scott" and indicated that Miller's 'herbicide and fungicide program was adequate.' Yet, Defendant RMA went on to find that 'the specific observational and photographic evidence presented by [Scott] and CRS was more credible than the general nature of the reports of Mr. Tuggle and Mr. Cooper.'" Miller also argues that "[t]he Defendants provide no reasoned basis, nor do they cite the 'evidence' they are referring to that suggests the opinions of Tuggle and Cooper are not 'credible.'" But Miller acknowledges the evidence cited in his quote, and he does not claim that the photographs were manipulated or that the specific observational evidence was erroneous.

Miller also asserts that the "Defendants similarly did not take the time to evaluate the 'relevant factors' surrounding competing expert opinions including applicable weather conditions or farming practices in Miller's area as verified by experts Cooper and Tuggle." He also argues that federal regulations require that FCIC procedures will be used in administering the policy, and that the provider must address the applicable factors when there

are opposing expert opinions.    *See* 7 C.F.R. § 457.8.    Miller says that the agency failed to consider whether other producers in Miller's area were using the same production practices or whether Tuggle and Cooper might have more direct experience in the area of Miller's farms.

Miller is essentially arguing that his experts should have been found more credible without providing any evidence to establish that claim.    He had the opportunity to provide any such evidence throughout the entire process. Further, there is no indication that the agency refused to consider the testimony of Tuggle and/or Cooper.    The determination explicitly noted the contradictory opinions of Miller's experts, then explained why the opinions were less credible.    As one example, the determination quoted Tuggle's opinion on Miller's herbicide and fungicide program, then quoted the Texas AgriLife publication "Weed Management in Texas Cotton," which discredited that opinion, and referenced the "specific observational and photographic evidence" it had previously discussed before determining that Miller's weed control methods were inadequate and not a GFP. Additionally, there are multiple exhibits, including those setting out the applicable practices.    The record simply does not support his claims, and he is unable to establish that the agency determination was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

For these reasons, the district court's grant of summary judgment to the agency is AFFIRMED.